(C. D. 270)

C. SOLOMON, JR. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 22, 1939)

*Lawrence & Tuttle (Charles F. Lawrence* of counsel) for the plaintiff.
*Webster J. Oliver,* Assistant Attorney General *(Richard H. Welsh,* special attorney, and *Joseph A. Howard, Jr.,* junior attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of San Francisco, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation

invoiced as corrugated nails. Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for. It is claimed that said articles are properly dutiable at 1½ cents per pound under the provision in paragraph 331 of said act as nails not specially provided for.

At the hearing in this case, held in San Francisco before Cline, Judge, on March 17, 1939, counsel for the Government moved to dismiss the protest as insufficient. The protest reads in part "Wiggle nails assessed at 45 percent under paragraph 331 are dutiable at 1½ cents per pound under the same paragraph, as nails, n. s. p. f.," whereas there is no merchandise on the invoice accompanying the protest assessed with duty at the rate of 45 per centum ad valorem under paragraph 331. The corrugated nails on the present invoice were assessed with duty at 45 per centum ad valorem under paragraph 397. The motion was taken under advisement and is now before us for determination.

It appears from the papers that the invoice and entry covered only one item of merchandise, to wit, the so-called "wiggle" nails now before the court. Moreover, the appraiser not only answered the protest, but in addition submitted samples of the merchandise in question, and the protest specifies the merchandise by name and indicates the rate of duty at which it was assessed, although to be sure it inadvertently sets forth the wrong paragraph number. Furthermore, the following printed statement appears in the protest: "This protest is intended to apply to all goods covered by the entries referred to, of the same kind or character as the goods specified, whether or not particularly enumerated herein." Immediately following this printed statement the number of the entry, the name of the vessel, and the dates of entry and liquidation are given. It is evident that nobody, least of all the collector, was misled by the clerical mistake in the protest. Under the circumstances we therefore deny the Government's motion to dismiss and we hold the protest to be sufficient.

Samples of the so-called corrugated or wiggle nails were admitted in evidence as Collective Exhibit 1. In addition to said samples the plaintiff offered in evidence the testimony of two witnesses.

The first witness, Adrian R. Solomon, son of the plaintiff, testified that he had been connected with his father's business since 1920, during which time the firm had been selling articles which they considered to be nails; that in his opinion a nail was any device designed to hold two pieces of wood or any material together by driving with some instrument, for instance by hitting it with a hammer, and that articles like Collective Exhibit 1 are so used.

At this juncture samples of pieces of wood joined together by the so-called wiggle nails were admitted in evidence as Illustrative Exhibits A to E, inclusive.

The witness then testified that he had seen so-called wiggle nails used on many occasions; that they are driven into the wood with a hammer; and that this was the only use that he had ever known them to be put to.

Counsel for the plaintiff then showed the witness a cardboard box on which is the picture of the bottom of a chair and the following printed words: "The Stanley Wiggle-Nail for repairing broken furniture and other wooden articles," which box was admitted in evidence as Illustrative Exhibit F.

Counsel then showed the witness three metal objects which the witness described as being commonly known as "clamp" nails, stating that they were driven with a hammer and were used for holding pieces of wood together. These were admitted in evidence as Illustrative Exhibit G, over the objection of counsel for the Government.

The witness was then shown two bent pieces of metal which he described as what are commonly known in the trade as hook nails, which were admitted in evidence as Illustrative Exhibit H.

On cross examination the witness testified that his understanding of a nail was a metal object driven into or through two pieces of material for the purpose of holding them together; that in his opinion a nail does not have to have a head; that the broad flat edge of Exhibit 1 would be considered a head, and that sometimes he labels the so-called wiggle nails as corrugated fasteners. At this juncture counsel for the Government offered a tin box which the witness admitted came from his establishment, on the outside of which is printed the following words: "Saw-edge Corrugated Fasteners parallel divergent—Cary Mfg. Co.—C. Solomon, Jr. Agent—314 Battery St.— San Francisco," which was admitted in evidence as Illustrative Exhibit I.

On re-direct examination the witness testified that in addition to the name printed on Illustrative Exhibit I, the merchandise in question was variously called wiggle nails, corrugated nails, and "Jew" nails.

The second witness, Chapman Solomon, Jr., the plaintiff herein, testified that he imported articles like Exhibit 1 from Sweden and sold same to American manufacturers, and that they are used to fasten two pieces of wood together.

On cross-examination the witness testified that his understanding of a nail was any piece of metal used to join two or more pieces of wood or other materials together, regardless of its form or structure.

The Government offered in evidence the testimony of two witnesses.

The first witness, Wiley B. Purdue, traveling salesman for a wholesale hardware company, testified that his company had been engaged in business since 1873 in selling, among other things, nails;

that he personally had been selling nails for the last 25 years from the Pacific coast as far East as Cleveland; that in his opinion a nail is a wire-drawn product with a head and a point on it that joins two pieces of wood together; that he had sold merchandise similar to Collective Exhibit 1 for the last 25 years under the head of joint fasteners; that where two pieces of wood are dovetailed together as in boxes, either with or without glue, a joint fastener is used to reinforce the joint. At this juncture the witness produced one of his company's catalogs, page 413 of which was admitted in evidence as defendant's Exhibit 2, wherein articles like Collective Exhibit 1 are described as joint fasteners.

On cross-examination the witness testified that a nail does not have to be wire-drawn, but may be made of iron; that in the wholesale hardware trade a nail is something that joins two pieces of wood together without any other support; that Illustrative Exhibit H is not a nail, but a hook fastener; that ordinary nails on the type of Illustrative Exhibit B differ from the so-called wiggle nails on the side of the same exhibit in that the former join two pieces of wood together in actual use while the latter are used to join them together while the glue is setting, as a matter of reinforcement, and that he had never seen fruit boxes with the parts fastened together solely by the use of so-called wiggle nails.

The second Government witness, Alfred Lilly, a carpenter and cabinet maker, testified that he had been engaged in that business during the past 17 years; that there are two types of nails, the old-time cut nail and the wire nail; that both of these types of nails have heads and shanks; that in the course of his business he had occasion to buy and use articles similar to Collective Exhibit 1, and that he had always bought them as corrugated fasteners.

The witness was then shown a can with a label on it, purchased from the plaintiff, containing articles of various sizes, similar to Collective Exhibit 1, and he testified that based upon his 17 years' experience the articles like Exhibit 1 were corrugated fasteners and not nails.

On cross-examination he testified that the articles like Collective Exhibit 1 were used to hold together the corners of boxes; that they were used to fasten together joints and wide boards on shelving; that steel dowels are not nails, but dowels, and are used on partitions on concrete floors; and that he did not know of any nails without heads.

Upon this record we are of the opinion that the plaintiff has failed to sustain the burden resting upon him to prove that the collector's classification was erroneous and that the involved merchandise is properly classifiable under the *eo nomine* provision in paragraph 331 of the Tariff Act of 1930 for nails. While it is true that nails are of

various types, we can find no dictionary definition of nails which would include articles like those here imported.

Moreover, both the plaintiff's and the defendant's witnesses have testified that the articles in question are bought and sold as fasteners and not as nails. More convincing even than that is Illustrative Exhibit I, which shows articles similar to those imported herein to be sold by the plaintiff himself as "Saw-edge Corrugated Fasteners," and not as nails.

Upon the entire record we therefore hold that in the absence of any *eo nomine* provision covering the same the merchandise is properly dutiable at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for, as classified by the collector.

All claims of the plaintiff are therefore overruled, and the decision of the collector is affirmed. Judgment will be rendered accordingly.